**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MELISSA SUE SHIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-9-TLW |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Melissa Sue Shields seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 11). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 34-year old female, filed for Title II and Title XVI benefits on June 22, 2011. (R. 117-20, 121-27). Plaintiff alleged a disability onset date of November 27, 2010. (R. 117). Plaintiff claimed that she was unable to work due to arthritis in her knees and hands, back pain, poor vision in her left eye, hyperthyroid, obesity, and swelling in her feet and legs (R. 141). Plaintiff's claims for benefits were denied initially on September 22, 2011, and on reconsideration on October 31, 2011. (R. 51-64). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. 75-76). The ALJ held a hearing on August 6, 2012. (R. 26-50). The ALJ issued a decision on August 17, 2012, denying benefits. (R. 11-25). The Appeals Council denied review, and plaintiff appealed. (R. 1-6; dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff was insured under Title II through December 31, 2015. (R. 16). Plaintiff had not performed any substantial gainful activity since November 27, 2010, her alleged disability onset date. Id. The ALJ found that plaintiff had severe impairments of obesity and hypertension. Id. The ALJ also found that plaintiff's alleged impairments of "borderline diabetes, hypertension, and some vision loss in the left eye" were non-severe impairments based on the medical evidence. Id. Plaintiff's impairments did not meet or medically equal a listing. (R. 17).

The ALJ then summarized plaintiff's testimony and the medical evidence. Plaintiff testified that she lived with her four children, two of whom were on Social Security disability. (R. 17-18). Plaintiff was 5'1" and weighed 422 pounds. (R. 18). She stated that she had only gained ten to fifteen pounds since her alleged disability onset date. Id.

Plaintiff testified that she had past relevant work experience as a cook and dishwasher at a nursing home but could not stand or bend well enough to do that work now. Id. She sits in a rolling chair to cook or wash dishes. Id. Plaintiff stated that she does not have much difficulty sitting. Id. Plaintiff has not shopped for groceries in almost a year. Id. She does not drive or attend church, but she visits with family and friends once a month. Id. A friend does her shopping for her and also drove her to the hearing. Id.

Plaintiff stated that she cannot perform overhead lifting. Id. She can only stand five minutes before experiencing back and knee pain. Id. She can sit fifteen to twenty-five minutes. Id. Plaintiff walks at a slow pace. Id. Plaintiff reported that she takes short naps daily and has insomnia. Id. She has sleeping pills but only sleeps well one or two nights in a week. Id. She is able to groom herself, although she uses a shower chair for bathing. Id. She also has difficulty getting out of bed. Id.

Plaintiff testified that a weight loss clinic recommended bariatric surgery. Id. She also stated that x-rays showed that her knees were "bone-on-bone." Id. She receives pain management treatment for her knees. Id.

The medical evidence revealed that plaintiff was diagnosed with central retinal artery occlusion and papillary edema of the left eye in April 2011. (R. 18-19). At that time, plaintiff had 20/20 vision in the right eye, but only "light perception in the left eye." (R. 18). She also had not taken her medications for nine months and had gained forty pounds. Id.

Plaintiff underwent a consultative examination in September 2011. (R. 19). Plaintiff complained of low back and knee pain, which she attributed to weight gain and climbing steps at home. Id. She stated that the pain increased "with exertion, bending, and positioning," but improved with rest and medication. Id. She did not get relief with chiropractic treatment and could not afford physical therapy. Id. She also complained of insomnia. Id.

The consultative examining physician found that plaintiff was 5'2" with a weight of 425 pounds. Id. Her vision, even in the left eye, was normal. Id. Plaintiff had full range of motion and was able to move easily. Id. She had a normal, stable gait and the ability to perform normal toe and heel walking. Id. The consultative examining physician assessed plaintiff with "class III super obesity, chronic low back and knee pain, and hypertension." Id.

Two non-examining agency physicians reviewed plaintiff's medical records in September and October 2011 and determined that plaintiff could perform the full range of medium work. Id.

Plaintiff saw Dr. Jean Bernard for back and knee pain "related to severe morbid obesity" in February 2012. Id. Plaintiff reported that she had severe pain but had not received any treatment other than pain medication. Id. Plaintiff "ambulated fairly well but was very uncomfortable with sitting in the exam room." Id. Plaintiff stated that she was interested in "medical weight loss intervention." Id. At a follow-up examination in March 2012, plaintiff was walking without assistive devices but had some swelling in her legs. Id. Dr. Bernard referred plaintiff to a weight loss surgeon and refilled a prescription for pain medication. Id. Two weeks later, plaintiff reported that she "was under enormous stress" dealing with three of her children. Id. In April 2012, plaintiff reported that anxiety was causing insomnia. Id. Dr. Bernard recommended diet and exercise and added an anti-anxiety medication for use at bedtime. (R. 20).

In May 2012, plaintiff "was ambulating well, but her gait was slightly unsteady due to her body habitus." Id.

The ALJ found that plaintiff was not credible. (R. 18).

The ALJ also denied plaintiff's request for a consultative examination because "the record does not suggest this would show anything beyond what is already revealed by the medical records and examinations." (R. 20).

Based on the record, the ALJ concluded that plaintiff retained the residual functional capacity to perform the full range of sedentary work. (R. 17). The ALJ rejected the opinions of the non-examining agency physicians who found that plaintiff could perform medium work because "[c]onsidering the claimant's weight, sedentary exertional activity would seem more reasonable." (R. 20).

Plaintiff could not perform her past relevant work. Id. However, because plaintiff was able to perform the full range of sedentary work, under the Medical-Vocational Guidelines, plaintiff was not disabled. (R. 20-21).

**ANALYSIS**

On appeal, plaintiff raises two errors. First, plaintiff argues that the ALJ erred at step two because he categorized plaintiff's hypertension as both severe and non-severe and failed to address plaintiff's impairments of hypothyroidism, osteo-arthritis, and depression. (Dkt. 23). Second, plaintiff argues that the ALJ failed to develop the record by denying the request for a consultative examination and for failing to contact plaintiff's treating physician for clarification.

**Step Two Errors**

Plaintiff argues that the ALJ erred in evaluating plaintiff's impairments at step two. Id. First, plaintiff contends that the ALJ found plaintiff's hypertension to be both a severe

impairment and a non-severe impairment. Id. Plaintiff also contends that the ALJ was required to evaluate plaintiff's hypothyroidism, osteo-arthritis, and depression and make a determination regarding the severity of those impairments. Id. Plaintiff argues that the failure to address all of the impairments at step two calls into question the ALJ's residual functional capacity findings. Id.

The Commissioner argues that any error at step two is harmless because the ALJ proceeded to the next step in the sequential analysis. (Dkt. 24). The Commissioner also argues that plaintiff is making technical arguments that should not overturn the ALJ's decision. Id. With respect to the alleged impairments that the ALJ did not address, the Commissioner argues that the ALJ discussed plaintiff's hypertension and hypothyroidism. Id. The Commissioner also argues that plaintiff's allegations of depression are not even supported by a diagnosis, so the ALJ did not err in failing to discuss depression at step two. Id.

The Tenth Circuit has held that an ALJ's failure to consider all of a claimant's impairments at step two is not reversible error if the ALJ finds at least one severe impairment and proceeds to the next step of the sequential analysis. See Carpenter v. Astrue, 537 F.3d 1264, 1265-66 (10th Cir. 2008) (holding that the ALJ's failure to consider all of the claimant's impairments in combination was harmless error). Therefore, even if the Court were to assume that the ALJ failed to consider some of plaintiff's impairments, "any error here became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." See id.

Additionally, at step two, plaintiff bears the burden to present evidence of a medically severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). A severe impairment is defined as a condition, "established by medical evidence

consisting of signs, symptoms, and laboratory findings," that also "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1508 and 416.908 (defining how an impairment is assessed); 404.1520(c) and 416.920(c) (defining "severe impairment); 404.1521 and 416.921 (defining basic work activities). The threshold for establishing a severe impairment requires only a "de minimis" showing. See Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)). However, plaintiff "must show more than the mere presence of a condition or ailment." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (citing Yuckert, 482 U.S. at 153).

In this case, the ALJ discussed the medical records and plaintiff's statements that she has been diagnosed with hypothyroidism. (R. 18-19). Specifically, the ALJ noted that plaintiff was noncompliant with her hypothyroid medication for a period of nine months, as stated in an April 2011 treatment note. (R. 18). The ALJ also noted that plaintiff was taking medication for hypothyroidism at the time of the consultative examination in September 2011. (R. 19). These records are sufficient to establish that plaintiff has a diagnosis of hypothyroidism, but they do not establish that this condition limits plaintiff's ability to perform basic work activities. Plaintiff does not argue that she has any such limitations. The Court has also reviewed the administrative record and finds no evidence that plaintiff's hypothyroidism imposes any limitations on her ability to work. Accordingly, plaintiff has failed to establish that hypothyroidism is a severe impairment.

Plaintiff has also failed to establish that she has osteoarthritis. Plaintiff testified at the hearing that x-rays taken two or three years ago established osteoarthritis because "her knees are bone-on-bone." (R. 18, 40). The administrative record contains no sign of any x-rays or diagnostic tests dating from that time, a fact that the reviewing agency physician noted in the

physical residual functional capacity assessment form. (R. 199). Plaintiff did undergo x-rays in May 2012, but the "views appeared within normal limits." (R. 217). Contrary to plaintiff's claim that she has osteoarthritis, all of the medical opinions in the record attribute plaintiff's knee pain to obesity. (R. 188-90, 192, 206, 217). The ALJ's findings at step two and in the residual functional capacity findings reflect the uncontradicted medical evidence, and the ALJ limited plaintiff to sedentary work because of the physical limitations imposed by her obesity. (R. 16, 17-20).

The administrative record also contains no diagnosis of depression. Plaintiff did not allege depression as a mental impairment, nor did she raise the issue at the hearing. (R. 26-50, 141). The Court has reviewed the medical records and finds only minimal references to depression and anxiety. (R. 213, 215). In March 2012, as part of an "initial behavioral assessment" for treatment of chronic pain, plaintiff's orthopedist noted that plaintiff was experiencing stress as a result of dealing with "three very difficult male children." (R. 213). The orthopedist found that plaintiff "shows symptomology of and admits to" depression. Id. In April 2012, plaintiff complained to the orthopedist of "anxiety causing difficulty in sleeping at night." (R. 215). The orthopedist prescribed an anti-anxiety medication for use at bedtime. Id. Based on this evidence, the Court finds that plaintiff has failed to establish that depression (or anxiety) is a severe medical impairment. See Pritchett v. Astrue, 220 Fed.Appx. 790, 792 (10th Cir. 2007) (unpublished)[1] (holding that a diagnosed pain disorder was not a severe impairment because the claimant failed to demonstrate how the impairment impacted his ability to perform basic work activities). Even if the Court assumed that the orthopedist's diagnosis of depression/anxiety was sufficient to establish the existence of the impairment, plaintiff's only symptom is insomnia,

---

[1] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

which the ALJ discussed. (R. 18). Plaintiff did not allege, nor does the record reflect, any limitations resulting from this symptom.

For these reasons, the Court finds that the ALJ did not err at step two by failing to identify hypothyroidism, osteoarthritis, and depression as severe impairments.

To the extent that plaintiff is arguing that these impairments are nonsevere impairments that the ALJ was required to discuss in the residual functional capacity analysis, the Court also finds no error. See Wells v. Colvin, 727 F.3d 1061, 1065 (10th Cir. 2013) (requiring the ALJ to consider all of the medically determinable impairments, both severe and nonsevere, in assessing a claimant's residual functional capacity). The ALJ discussed plaintiff's use of hypothyroid medication, her chronic knee pain, and her insomnia – the symptom and effects of the impairments that plaintiff argues the ALJ ignored – and still found that plaintiff could perform the full range of sedentary work. (R. 17-20). Plaintiff has cited to no evidence that would indicate greater functional limitations than those contained in the residual functional capacity findings, and, based on the medical evidence in the record, the Court can find none. The ALJ's residual functional capacity assessment is consistent with the medical opinion evidence from the treating and consultative examining physicians and is more limiting than the opinions of the non-examining agency physicians.

For these reasons, the Court finds that the ALJ did not err in evaluating plaintiff's impairments.

**Duty to Develop the Record**

Plaintiff argues that the ALJ erred in failing to order a consultative examination because the record was not sufficient to make a determination of plaintiff's disability. (Dkt. 23). Plaintiff argues that the only consultative examination in the record was performed in September 2011

and had normal findings with no functional limitations. Id. Plaintiff also argues that the ALJ should have contacted plaintiff's treating physician with respect to the impairments not discussed at step two. Id. Plaintiff appears to argue that the ALJ could not reach a decision regarding plaintiff's residual functional capacity without explicit findings from a physician regarding plaintiff's functional limitations. Id.

The Commissioner argues that the record contained sufficient evidence to support the ALJ's decision. (Dkt. 24). The Commissioner contends that plaintiff is seeking a second consultative examination because she does not agree with the findings from the first examination. Id. The Commissioner also argues that the ALJ is tasked with making residual functional capacity determinations based on the medical evidence, not on explicit findings from a physician. Id.

The ALJ has "broad latitude in ordering consultative examinations." Hawkins, 113 F.2d at 1166. Hawkins, citing the applicable regulations and other case law, holds that, despite the ALJ's discretion, a consultative examination must be ordered in three instances:

> "where there is a direct conflict in the medical evidence requiring resolution;"
> 
> "where the medical evidence in the record is inconclusive;" or
> 
> "where additional tests are required to explain a diagnosis already contained in the record."

Id. (citations omitted). Hawkins notes that "[t]he difficult cases are those where there is some evidence in the record or some allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling." Id. at 1167. In that situation, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." Id.

As discussed, *supra*, the medical evidence of plaintiff's impairments is consistent and supports the ALJ's finding that plaintiff's limitations are related to her obesity. There is no conflict in the medical evidence, nor is there any indication that the medical evidence is inconclusive. Plaintiff has chronic knee and back pain related to her obesity. Despite this pain, the medical evidence consistently indicates that plaintiff can ambulate effectively, can sit without difficulty, and has a full range of motion in her spine and extremities.

For these reasons, the ALJ did not err in denying plaintiff's request to order a second consultative examination.

The Court has already addressed the ALJ's treatment of plaintiff's impairments at step two, *supra*, and finds that the ALJ did not err in evaluating all of plaintiff's impairments and that the evidence was sufficient to reach a decision. Accordingly, the ALJ was not required to contact plaintiff's physicians for clarification.[2]

Finally, the Court rejects plaintiff's argument that the record does not contain specific evidence that reflects the ALJ's residual functional capacity findings. The Tenth Circuit has "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). Instead, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Id. See also 20 C.F.R.§§ 404.1527(d)(2), 416.927(d)(2).

---

[2] Effective March 26, 2012, the ALJ's duty to re-contact a medical source is not mandatory in cases in which the evidence is conflicting or ambiguous. See Borgsmiller v. Astrue, 499 Fed.Appx. 812, 816 n. 4 (10th Cir. 2012) (unpublished). Under the current regulations, the ALJ may either re-contact the physician or seek a consultative examination. See 20 C.F.R. §§ 404.1520b(c), 416.920b(c). However, because the evidence was sufficient and consistent, the ALJ was not required to seek additional information.

## CONCLUSION

For these reasons, the ALJ's decision finding plaintiff not disabled is **AFFIRMED**.

SO ORDERED this 31st day of March, 2015.

_____
T. Lane Wilson
United States Magistrate Judge